**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**TAMMEY J. BINSCHUS,**

      **Plaintiff,**     **CIVIL ACTION NO. 07-14105**

  **vs.**

                                       **DISTRICT JUDGE THOMAS L. LUDINGTON**

**COMMISSIONER OF**     **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

      **Defendant.**
_____/

## REPORT AND RECOMMENDATION

**RECOMMENDATION:** This Court recommends that Defendant's Motion for Summary Judgment (docket no. 19) be GRANTED, that Plaintiff's Motion for Summary Judgment (docket no. 12) be DENIED, and that Plaintiff's Complaint be DISMISSED, as there was substantial evidence on the record that Plaintiff remained capable of performing a significant number of jobs in the economy.

\*\*\*

Plaintiff filed an application for Supplemental Security Income on September 23, 2003, alleging that she had been disabled and unable to work since June 30, 1999 due to attention deficit hyperactivity disorder (ADHD), hypomania and anxiety disorder. (TR 29-30, 58, 61, 73). The Social Security Administration denied benefits. (TR 29, 36). A requested *de novo* hearing was held on May 31, 2006 before Administrative Law Judge (ALJ) Thomas L. Walters who subsequently found that the claimant was not entitled to Supplemental Security Income because she was not under a disability at any time from the date the application was filed through the date of the ALJ's January

24, 2007 decision. (TR 18, 27, 491). The Appeals Council declined to review the ALJ's decision and Plaintiff commenced the instant action for judicial review. (TR 4-6). The parties filed Motions for Summary Judgment and the issue for review is whether Defendant's denial of benefits was supported by substantial evidence on the record.

Plaintiff was thirty-nine years old at the time of the administrative hearing. (TR 496). Plaintiff has a GED and past work experience as a laborer, a waitress and painter. (TR 72, 74, 204). Plaintiff reported that she stopped working on June 30, 1999 due to ADHD, anxiety disorder and being hypomanic. (TR 73). Plaintiff lives with the youngest of her two children. (TR 496). Plaintiff has been incarcerated but was free by the time of the hearing. (TR 506).

Plaintiff testified that she sees a psychologist and a psychiatrist and she currently takes Lamictal and Trileptal. (TR 437, 499-500). She testified that she took Ibuprofen for back pain but it bothered her stomach so she takes Naproxen. (TR 500). Plaintiff has a history of using illegal drugs and alcohol to excess, but she testified that she has not used illegal drugs since 2002 and she was not using them at the time of the hearing. (TR 500-01). She testified that she had been taking drug tests regularly since April 2004 and had not tested positive on any of them. (TR 501). The record shows that Plaintiff has reported to her treatment providers that she started drinking at age 15 and using cocaine at age 27. (TR 185). Plaintiff started using crack cocaine in September 2002. (TR 185).

Plaintiff reports having problems with her medications, including with insurance coverage. (TR 502-03). She testified that she was going to attend a career center phlebotomy course through Michigan Rehabilitation Services but she postponed it until she gets an effective ADHD medication because it is difficult for her concentrate and study. (TR 502). Plaintiff is working with

2

Community Mental Health to get the most effective combination of medications. (TR 508). She stated that she will be able to return to work when this is achieved. (TR 508).

Plaintiff reports that as a result of her bipolar disorder, ADHD, and anxiety she has a difficult time getting along with other people and is argumentative. (TR 503). Plaintiff testified that sometimes she is able to interact with other people and other times she just wants to be left alone. (TR 511). Plaintiff stated that her medications make her tired but she has been advised not to drink caffeinated drinks because they could cause her to return to a manic state. (TR 503). Plaintiff explained that a good day is when she is "bouncing off the walls" even though her doctor advised her that it is not good for her. (TR 507). During her bad spells, she does not want to get up or do anything for two or three days. (TR 507). Plaintiff testified that she suffers episodes of depression at least once a month which may last three to four days and she had been hospitalized twice for suicide attempts. (TR 504-05). Plaintiff is able to drive a car but sometimes does not due to her medications. (TR 507). Plaintiff testified that she cleans around the house and her doctor advised that it may be an obsessive compulsive disorder. (TR 508).

Plaintiff testified that since 2004 (after she ceased using drugs and/or alcohol) her condition improved but the medications make her tired. (TR 509). At one of her prior jobs her boss allowed her to take a nap during her shift. (TR 509). She testified that when she was drinking she would drink to fall asleep but with medications she is now able to fall asleep without alcohol. (TR 510).

**Medical Record**

Plaintiff has a history of treatment for mental health issues and drug abuse. The record documents treatment at Foote Hospital from as far back as 1988, when Plaintiff reported to the emergency room for an overdose of a prescription drug and was diagnosed with suicidal depression. (TR 430-31). Plaintiff completed an alcohol dependence program in January 1994 and has attended

3

support groups for alcohol dependence. (TR 409, 421). On November 13, 2002 Plaintiff tested positive for cocaine use, however, she had tested negative for all substances on November 4, 2002. (TR 403).

On March 28, 2003 Plaintiff underwent a psychosocial assessment at the Segue, Inc./IMPACT program. (TR 188-96). The interviewing social worker noted that Plaintiff was referred for services by her parole agent due to her hypomania and drug addiction. (TR 195). One of the treatment recommendations, including medication management and psychiatric services, was employment. (TR 195). On April 9, 2003 Christina Zachar, M.D., diagnosed Plaintiff with bipolar disorder NOS (296.80) with recurrent episodes of minor depression and hypomanic symptoms, ADHD combined type (314.01), history of conduct disorder with unspecified onset (312.89), alcohol dependence abstaining (303.90) and cocaine dependence abstaining (304.20). Dr. Zachar recommended that Plaintiff continue with Depakote 500 mg and change the dose to 500mg QAM and 1000 mg QPM following a blood test. (TR 187).

On July 18, 2003 Plaintiff was evaluated by S. Wolcott, C.S.W., at a health department substance abuse program. (TR 391). Plaintiff reported good physical health with no medical problems. (TR 391). Plaintiff reported having been incarcerated for the prior three years and having attended thirty days of inpatient treatment for substance abuse in February 2003. (TR 392). She reported having used cocaine fourteen days prior to the July 18, 2003 evaluation. (TR 392). Plaintiff was taking Depakote for depression. (TR 391). Plaintiff reported having problems with serious depression and anxiety or tension unrelated to her substance use. (TR 395). The social worker diagnosed Plaintiff with Alcohol Dependence in full remission (303.93) and episodic Cocaine Dependence (304.22). (TR 395). The social worker recommended medically monitored intensive inpatient treatment. (TR 396).

Plaintiff received mental health services from Lifeways from November 2003 through April 2006. (TR 177). At Lifeways, Plaintiff treated with Anjali Mehta, M.D. (TR 242). In Plaintiff's initial psychosocial assessment at Impact on November 19, 2003 she was diagnosed with biopolar disorder (296.40), alcohol dependence (303.90), cocaine dependence (304.20) and a GAF/GAS of 51. (TR 180). Plaintiff reported that she had been clean and sober since June 3, 2003, but relapsed on cocaine approximately three weeks prior to the November 19, 2003 assessment. (TR 177).

On January 7, 2004 Plaintiff was admitted to Foote Hospital following a crack binge during which she expressed suicidal ideation and attempted to overdose on heroin. (TR 329, 331). The psychiatric admission history noted that Plaintiff had not been compliant with her medications. (TR 331). On January 28, 2004, Dr. Zachar increased Plaintiff's Depakote to 500 mg QAM and 1000 mg QHS and Plaintiff was to continue taking her selenium supplement and Wellbutrin SR 150 mg per day. (TR 260). Dr. Zachar noted that Plaintiff's attention, orientation and memory seemed intact, her insight was marginal to adequate and her judgment was adequate. (TR 259). In January 2005 Plaintiff went to the emergency room complaining of chest pain which developed after smoking crack. (TR 304). At that time, Plaintiff reported having used crack cocaine and heroin during the past couple of months. (TR 311). On August 20, 2005 Plaintiff was brought into the emergency room as the result of an acute heroin overdose with respiratory depression. (TR 282-84). She also had an abrasion on the top of her right foot for which she received follow-up treatment on August 28, 2005. (TR 284).

On November 20, 2003 Plaintiff complained of pain in her lower back and left leg. (TR 486). Plaintiff's examining nurse noted that Plaintiff had full range of motion in the lumbosacral spine and tenderness on palpation of the paraspinal muscles in the lumbosacral region. (TR 484). Plaintiff underwent x-rays of her lumbosacral spine and left hip. (TR 483). James Heisel, M.D.,

radiologist, concluded that there was no acute abnormality, unremarkable appearance of the left hip, and mild to moderate degenerative changes involving the lower lumbar spine and sacroiliac joints, moderate disc narrowing at L5-S1, evidence of bilateral L5 spondylolysis and mild grade I L5-S1 spondylolisthesis. (TR 483). On February 12, 2004 Plaintiff reported pain in her lumbosacral spine and left hip for which she was taking Ibuprofen. (TR 479). The examining nurse noted multiple nodules or lipomas at the base of Plaintiff's spine and on her hip. (TR 479). Plaintiff was prescribed Vicodin as needed for her pain. (TR 479). On January 10, 2006 Plaintiff had a mass removed from her left anterior thigh. (TR 274-75).

**Vocational Expert**

The Vocational Expert (VE) classified Plaintiff's past work as a general laborer in a factory and as a waitress as light and unskilled. (TR 512). The ALJ asked the VE whether there would be jobs available at the light or medium level for a person of the same age, education and vocational experience as the claimant who has no exertional limitations but requires unskilled, low-stress entry level work that consists of one to three-step processes, does not involve working around machinery or unprotected heights due to medication side-effects and has limited contact with co-workers and no contact with the public. (TR 512). The VE testified that there would be jobs available in Michigan and the medium, unskilled jobs include night stock clerk (1,365 positions), night janitor (23,400 positions) and hand packer (2,825 positions). (TR 513). The light unskilled jobs include mail room clerk (1,575 positions), office machine operator (1,110 positions) and hand packer (5,470 positions). (TR 513). The VE further testified that if Plaintiff's testimony were found to be credible and supported by medical evidence, Plaintiff might be able to "perform" competitive employment but the VE was not sure whether Plaintiff could "maintain" competitive employment due to bouts of depression lasting two to three days, the side effects of Plaintiff's medication and Plaintiff's

decrease in attention. (TR 513). The VE stated that her testimony was consistent with the Dictionary of Occupational Titles.

## ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff had not engaged in substantial gainful activity since September 23, 2003, suffered from bipolar disorder, depression, attention deficit hyperactivity disorder and poly substance dependence, all severe impairments. The ALJ found that from Plaintiff's alleged onset date through August 20, 2005 the following impairments equaled the Listing of Impairments: organic mental disorders 12.02, affective disorders 12.04 and substance abuse disorders 12.09. (TR 17). The ALJ found that Plaintiff's substance use disorder was a contributing factor material to her disability during that time. As of August 21, 2005, the date Plaintiff stopped the substance use, Plaintiff continued to have a severe impairment or combination of impairments but did not have an impairment or combination of impairments that meets or medically equals the Listing of Impairments. The ALJ found that as of August 21, 2005 Plaintiff would be unable to perform her past relevant work but concluded that she had the residual functional capacity to perform a limited range of work at all exertional levels and was capable of performing a significant number of jobs in the economy. (TR 24-27). Therefore, she was not suffering from a disability under the Social Security Act. (TR 27).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance;

it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528.  It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility.  *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole.  *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.  *See Her v. Commissioner*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

## **DISCUSSION AND ANALYSIS**

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis.  In the first four steps, Plaintiff was required to show that:

(1)     she was not presently engaged in substantial gainful employment; and

(2)     she suffered from a severe impairment; and

(3)     the impairment met or was medically equal to a "listed impairment;" or

(4)     she did not have the residual functional capacity to perform her relevant past work.

*See* 20 C.F.R. § 416.920(a)-(f). If Plaintiff's impairments prevented her from doing her past work, the Commissioner, at step five, would consider her residual functional capacity ("RFC"), age, education and past work experience to determine if she could perform other work. If she could not, she would be deemed disabled. *Id*. § 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

Plaintiff argues that the ALJ erred in finding that Plaintiff's drug and alcohol use were material to her disability and failed to accord proper weight to physicians opinions dated after August 2005. Plaintiff also argues that the ALJ failed to properly evaluate her subjective complaints of pain.

***Whether The ALJ Properly Considered Plaintiff's Drug And Alcohol Use***

Plaintiff argues that the ALJ erred in finding that Plaintiff's severe conditions did not result in functional limitations that meet or equal the requirements of the listings absent Plaintiff's substance abuse. (TR 23). The ALJ found that as of August 21, 2005 Plaintiff stopped the substance use. The ALJ concluded that as of August 21, 2005, Plaintiff had the RFC to perform work at "all exertional levels, involving unskilled, entry level work with one to three step instruction and involving no work around machinery or unprotected heights." (TR 23). The work must also be low stress, include no interaction with the general public and only limited interaction with co-

workers. (TR 23-24).

Under 42 U.S.C. § 423 (d)(2)(C) and 20 C.F.R. § 416.935(b)(1) the ALJ is required to make a determination about whether alcoholism or drug addiction is a contributing factor material to a disability determination. 42 U.S.C. § 423(d)(2)(C) provides that "[a]n individual shall not be considered to be disabled for purposes of this [subchapter] if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." *See also* 20 C.R.F. § 416.935(a). The regulations provide that "[t]he key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol." 20 C.F.R. § 416.935(b)(1).

First, the ALJ properly noted which of Plaintiff's conditions were severe and met the Listing of Impairments. The ALJ found that Plaintiff's substance use stopped on August 21, 2005. (TR 26). Plaintiff argues that there is no evidence that Plaintiff "consistently" used drugs following her drug screens in April 2004. (TR 281-88, docket no. 12 at 14). A drug screen collected on April 5, 2004 tested positive for cocaine, however, drug screens on March 9, April 12 and April 28, 2004 were all negative. (TR 314-17).

On January 2, 2005 Richard Byler, M.D., saw Plaintiff for a cardiology consultation following Plaintiff's admission to the hospital with chest pains secondary to smoking crack. (TR 311-13). Dr. Byler noted that Plaintiff reported her crack cocaine and heroin use and that she had started using again in the past couple of months, most recently four days prior to the consultation. (TR 311). Dr. Byler noted that he encouraged Plaintiff to stop the drug abuse and stop smoking. (TR 313). The ALJ cited to evidence showing that Plaintiff was in treatment for substance abuse in 2003. (TR 21-22, 177-196). On November 19, 2003 Plaintiff reported to a program for substance

abuse where she reported a history of cocaine use since age 27, residential treatment for cocaine use in February and March 2003 and although Plaintiff reported being clean from June 3, 2003, she relapsed on cocaine three weeks prior to November 19, 2003. (TR 172, 177-82). Plaintiff admits that she had a final binge of drug abuse in August 2005. (Docket no. 12 at 14, TR 282-84). The record does not show that Plaintiff was abusing substances after the August 20, 2005 binge and resulting hospitalization. The ALJ's finding that Plaintiff stopped the substance use beginning August 21, 2005 is supported by substantial evidence.

Next, the ALJ considered evidence after Plaintiff became drug and alcohol free to determine that her impairments, although severe, did not meet the Listing of Impairments. The Commissioner has prescribed rules for evaluating mental impairments. *See* 20 C.F.R. § 416.920a. The Commissioner first determines whether there is a medically determinable mental disorder specified in one of nine diagnostic categories. *See id.*; 20 C.F.R. Pt. 404. Subpt. P, App. 1 § 12.00A. Thereafter, the Commissioner measures the severity of a mental disorder in terms of functional restrictions, known as the "B" criteria, by determining the frequency and intensity of the deficits.

The "B" criteria require an evaluation in four areas with a relative rating for each area. *See* 20 C.F.R. § 416.920a(c)(3). The Commissioner must evaluate limitations in activities of daily living, social functioning and concentration, persistence, or pace and rate those on a five-point scale ranging between none, mild, moderate, marked, and extreme. The fourth area is deterioration or decompensation in work or work-like settings and calls for a rating of never, one or two, three, and four or more. "The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity." 20 C.F.R. § 416.920a(c)(4). The ALJ found that prior to the August 21, 2005 date that Plaintiff stopped the substance use, Plaintiff had mild limitations in activities of daily living, marked difficulties in maintaining social functioning, marked

11

deficiencies in concentration, persistence or pace and one to two episodes of decompensation. (TR 22). The ALJ pointed to evidence in the record to support this conclusion, including Plaintiff's prior incarceration, her relapses following residential substance abuse treatment, her inability to maintain work, her admission to the hospital for an acute heroin overdose and her manic and depressive symptoms. (TR 21-22). The ALJ's findings are more limited than the conclusions in the state agency psychiatric reviews completed in June 2003 and January 2004, in which the degrees of limitation ranged from mild to moderate. (TR 208, 230).

The ALJ found that as of August 21, 2005 when Plaintiff stopped her substance use, Plaintiff had mild limitations in activities of daily living, mild difficulties in maintaining social functioning, moderate deficiencies in concentration, persistence or pace and no episodes of decompensation. (TR 25). The ALJ cited evidence showing that since Plaintiff has maintained her sobriety, there is no evidence of suicidal attempts or related hospitalizations although she has experienced depressive symptoms, and there is no evidence of legal charges since Plaintiff was diagnosed and given medication. (TR 25). Plaintiff testified that she is working with a Michigan rehabilitation organization in an attempt to secure employment. (TR 25, 502). Plaintiff testified that she is now able to sleep at night without the use of alcohol or drugs. (TR 510). The ALJ cited treatment notes in which Plaintiff's psychiatrist Anjali Mehta, M.D., noted on February 3, 2006 that Plaintiff reported that she was able to "maintain herself with school," was having no problems focusing on her school work and felt that things were getting better. (TR 440-41). The ALJ also relied on Dr. Mehta's note that Plaintiff's functioning did not seem impaired. (TR 24, 440-41). He relied on March 2006 notes in which Plaintiff was reported to be depressed with suicidal thoughts, but was able to maintain her sobriety. (TR 24-25, 438). In May 2006 Plaintiff's therapist noted that Plaintiff's affect was appropriate and she was making progress identifying her stressors. (TR 455).

Her prognosis was "good." (TR 25, 455).

Plaintiff appears to argue that the ALJ did not properly consider the treatment records of Dr. Mehta from August 24, 2005 through April 26, 2006 and the progress notes of Dian Breining, L.P.C., from January 19, 2006. Plaintiff argues that these records show that her mental health continued to deteriorate after she stopped using drugs[1]. (Docket no. 12 at 14). There is nothing in the records cited by Plaintiff which contradicts the findings of ALJ. The ALJ cited to and considered the records of both Dr. Mehta and Breining. (TR 23, 24, 435-445). On October 24, 2005 Dr. Mehta noted that Plaintiff had no psychosis, no suicidal ideations, Plaintiff reported sleeping through the night and was talking about moving to Lansing and getting financial aid for school after her mood stabilizes. (TR 445). The ALJ cited Dr. Mehta's December 6, 2005 report that Plaintiff was hyper and upbeat, but able to focus "okay." (TR 443). On February 3, 2006 Dr. Mehta noted that Plaintiff reported that she was doing "really well" at school. (TR 440). Dr. Mehta noted that Plaintiff would continue with the same dosage of medication, Plaintiff was functioning fairly well

---

[1]In her Reply Brief, Plaintiff also argues that the ALJ mischaracterized the record and appears to argue that the ALJ did not address the following "On 3/9/06, 8 months after the ALJ declared Plaintiff was no longer disabled because she had quit abusing DAA. (sic) Dr. Anjali Mehta, her treating psychiatrist, in a report to DHS maintained the opinion Plaintiff was disabled for at least the next six months because of her bi-polar mental disease. (AR 250)." This statement suggesting that Plaintiff was disabled for at least six months does not appear on page 250 of the transcript or in Dr. Mehta's March 9, 2006 report. (TR 250, 438-39). The statement appears in a response on a state agency Medical Needs form and is unaccompanied by an explanation. (TR 251). The ultimate finding of disability is reserved to the Commissioner. Although it is proper for the ALJ to give a treating physician's opinion controlling weight, the Social Security Administration Regulations do not afford the same deference to opinions on an issue reserved to the Commissioner, such as a final determination of "disabled" or "unable to work." Dispositive administrative findings relating to the determination of a disability and Plaintiff's RFC are issues reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(e), 416.927(e)(1), (2). As set forth herein, the ALJ's findings on this matter are supported by substantial evidence, including his consideration of Dr. Mehta's progress reports which do not contain evidence contrary to the ALJ's conclusions.

and her functioning did not seem to be impaired at that time. (TR 441). On March 9, 2006 Dr. Mehta observed that Plaintiff had not gone to school for the past few days and was feeling very down and having thoughts of suicide. (TR 438). The doctor noted that Plaintiff had "not been able to focus or anything," but Plaintiff did not think she needed to be in the hospital. (TR 438). On March 9 and March 28, 2006, Dr. Mehta charted that Plaintiff was doing a "good" job staying away from drugs. (TR 437-39). The ALJ cited Breining's progress notes including Breining's note that Plaintiff was making progress in identifying stressors and adjusting to her needs. (TR 25, 455). Although notes from the same day under "session content" state "cannot hold a job w/impulsive behaviors," "racing-rapid thoughts; cannot focus [and] concentrate; cannot handle school" the comments appear to be a record of Plaintiff's subjective report. The ALJ considered both Dr. Mehta and Breining's reports and notes and made findings consistent with both.

Plaintiff also argues that Psychiatric Reviews completed by William C. Schirado, Ph.D, dated January 9, 2004 and Larry Kravitz, Psy.D., dated June 5, 2003 show that Plaintiff had lost "50%" of her ability to function in certain areas and that, to the extent that the record is not fully developed regarding whether Plaintiff's alcoholism and drug addiction are material to her disability, remand is required. (Docket no. 12 at 15). Both of the Psychiatric Reviews are dated prior to the date on which the ALJ found that Plaintiff stopped using substances. As set forth above, the ALJ's determination that Plaintiff's substance use disorders were a contributing material factor to her disability determination through August 20, 2005 is supported by substantial evidence and the Court should decline to remand on this basis. Dr. Kravitz also noted that Plaintiff "should be capable of brief and superficial work place contacts" and she "retains the ability to sustain performance on simple, routine, work tasks," a limitation which the ALJ included in the RFC. (TR 236).

The ALJ considered evidence from the time period in which Plaintiff was abusing substances

and distinguished that evidence from the period after Plaintiff stopped. The ALJ found that Plaintiff's substance use disorder was a contributing factor material to the determination of disability from the date of her application through August 20, 2005. (TR 27). The ALJ found that beginning August 21, 2005, Plaintiff substance abuse was not a contributing factor material to determining disability. (TR 27). The ALJ's findings are supported by substantial evidence.

***Whether The ALJ Properly Assessed Plaintiff's Complaints***

Plaintiff argues that the ALJ erred in assessing Plaintiff's credibility. "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters,* 127 F.3d at 531. Credibility assessments are not insulated from judicial review. Despite deference due, such a determination must nevertheless be supported by substantial evidence. *Id.* An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p. "It is not enough to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" *Id.* "The adjudicator may find all, only some, or none of an individual's allegations to be credible" and may also find the statements credible to a certain degree. *See id.*

Furthermore, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 416.929(c)(2). In addition

to objective medical evidence, the ALJ must consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of claimant's pain, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for pain relief, (6) any measures used to relieve the pain, and (7) functional limitations and restrictions due to the pain. *See* 20 C.F.R. § 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

The ALJ found that Plaintiff's subjective complaints are not fully credible. (TR 24). The ALJ stated that if Plaintiff stopped the substance abuse, the "the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (TR 24). The ALJ noted that Plaintiff testified that she had not used substances since 2002, however, the medical records revealed an acute heroin overdose in August 2005. (TR 24, 282-84, 500-01). The ALJ addressed Plaintiff's activities of daily living and pointed out that Plaintiff is able to clean her house, drive and sleep at night with the aid of medication and without alcohol or illicit drugs. (TR 24).

The ALJ found that the objective evidence from August 21, 2005 forward continued to show symptoms of Plaintiff's depression, attention deficit hyperactivity disorder and her bipolar disorder, however, Plaintiff's treatment providers noted that Plaintiff was able to focus, was in school and doing well, was maintaining her sobriety and was making progress identifying her stressors. (TR 24-25). The ALJ noted that Plaintiff did not consistently take her medication until 2003 and that there is no evidence that Plaintiff has been in trouble with the law since she was given medication. (TR 21, 25).

16

Plaintiff also appears to argue that the ALJ failed to consider that Plaintiff suffers from low back pain and failed to analyze whether it was a severe impairment.  (Docket no. 12 at 17).  While the record contains results of a lumbar spine x-ray which show evidence of mild degenerative disc narrowing, some spondylolysis, and mild spondylolisthesis, this condition was not raised in Plaintiff's application or at the hearing.  (TR 458-90).  Further, Plaintiff cites to no evidence of work-related limitations caused by a long-lasting impairment.

In view of the evidence, the ALJ could reasonably conclude that Plaintiff's subjective complaints regarding the extent to which she is impaired and the impact of her symptoms and impairments on her ability to work were not entirely credible.  The ALJ's determinations regarding Plaintiff's credibility are supported by substantial evidence.  The ALJ's finding that there are a significant number of jobs in the economy which Plaintiff can perform is supported by substantial evidence in the record and the VE's testimony.

## **CONCLUSION**

The ALJ's opinion is supported by substantial evidence.  Defendant's Motion for Summary Judgment (docket no. 19) should be granted, that of Plaintiff (docket no. 12) denied and the instant complaint dismissed.

## **REVIEW OF REPORT AND RECOMMENDATION**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not

preserve all objections that party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: January 08, 2009          s/ Mona K. Majozub
                                 MONA K. MAJZOUB
                                 UNITED STATES MAGISTRATE JUDGE


### PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: January 08, 2009          s/ Lisa C. Bartlett
                                 Courtroom Deputy